```
              UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Private Jet Services Group, Inc.

    v.                                    Civil No. 05-cv-98-JD
                                          Opinion No. 2006 DNH 116

Sky King, Inc.

## O R D E R

Private Jet Services Group, Inc. ("PJS"), brought suit against Sky King, Inc., alleging that Sky King breached its contracts to provide transportation services for PJS's clients and asserting a claim under the New Hampshire Consumer Protection Act.  In response, Sky King raised seventeen affirmative defenses, including setoff, and brought counterclaims, alleging breach of contract, quantum meruit, and unfair and fraudulent business practices under California law.  PJS answered the counterclaims with eighteen affirmative defenses and now moves for summary judgment as to Sky King's liability on its breach of contract claims in Counts II through IV.  Sky King objects to PJS's motion and moves for summary judgment on two of PJS's claims and its counterclaim of breach of contract.

Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255. "The presence of cross motions for summary judgment neither dilutes nor distorts this standard of review." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006).

Background

PJS provides air transportation for its customers by contracting with air carrier companies for flight services. Sky King, Inc., is a California company in the business of providing private charter jet services. In early 2005, PJS entered into

four agreements with Sky King, Inc., to provide air transportation for PJS customers in March, April, and May of that year.  Specifically, on January 12, 2005, PJS contracted with Sky King to provide flight services for teams playing in the NCAA Tournament during March of 2005; on February 1, they contracted for services to be provided on April 10 and 14, 2005; on February 2, they contracted for services to be provided between May 3 and May 10, 2005; and on February 4 they contracted for services to be provided on April 7, 2005.  PJS paid Sky King for the contracted services, other than the NCAA Tournament flights, before the services were provided, in the total amount of $301,140.

During the course of the NCAA Tournament, Sky King experienced problems with some of the flights, which caused delays and cancellations.  The parties dispute how many flights were affected, the reasons for and extent of the problems with the flights, and the nature of Sky King's response to the problems.  The flight problems aroused the concern of the NCAA's travel agent, Shorts Travel Management.  On March 21, the NCAA requested a conference call to address the problems with flights provided by PJS, and the call was held on March 22, involving representatives of the NCAA, Shorts, and the president of PJS, Greg Raiff.  Shorts and the NCAA asked Raiff if PJS could be

certain that no further delays would occur.  On March 23, PJS offered to terminate the agreement with Shorts because it could not guarantee that further delays would not occur.

PJS then terminated the NCAA Tournament contract with Sky King.  The parties dispute the reasons the contract was terminated and the amount PJS was obligated to pay Sky King under that contract.  Sky King did not provide any of the other services that had been agreed to and paid for under the three February contracts but did retain the $301,140 that it had been paid for those services.

## Discussion

PJS alleges in Counts I through IV that Sky King breached all four contracts and alleges in Count V that Sky King violated the New Hampshire Consumer Protection Act.  Sky King alleges in its counterclaims that PJS breached the NCAA Tournament contract, Count I, and brings claims for quantum meruit, Count II, and unfair and fraudulent business practices under California law, Count III.  PJS seeks summary judgment in its favor on its breach of contract claims for the February contracts, Counts II through IV.  Sky King seeks summary judgment in its favor on PJS's breach of contract claim based on the NCAA Tournament contract and PJS's Consumer Protection Act claim.  Sky King also seeks summary

judgment on its counterclaim that PJS breached the NCAA Tournament contract.  The parties' motions are considered separately under the summary judgment standard.

I.  PJS's Motion for Summary Judgment

PJS and Sky King agree that the three February contracts, for services to be performed in April and May, were valid agreements.  They also agree that PJS paid for those services and that Sky King did not provide any of the agreed upon services.  They further agree that California law applies to their disputes about these contracts.  Sky King asserts that it did not breach those contracts because its performance was excused under the doctrine of setoff, based on its claim that PJS failed to pay for services it provided under the NCAA Tournament contract.

PJS premises its motion for summary judgment on the assumption that the doctrine of setoff applies only when the offsetting claim and the defective performance occurred within the same contract.  In support of that assumption, it relies on a statement from Burnett & Doty Dev. Co. v. C.S. Phillips, 84 Cal. App. 3d 384, 391 (Cal. Ct. App. 1978), where the court addressed prejudgment interest, which is not an issue in this case.[1]

---

[1] "When a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective

Because there was only one contract at issue in <u>Burnett & Doty</u>, the court had no reason to consider the doctrine of setoff in the context of several contracts between the same parties.  PJS also cites cases under the Uniform Commercial Code, which apply only to the sale of goods.  Because the contracts at issue here were for services, UCC cases are inapposite.

In contrast, as Sky King points out, the doctrine of setoff applies to mutual indebtedness arising from contracts or transactions between the same parties.  <u>See, e.g.</u>, <u>Prudential Reinsurance Co. v. Superior Court</u>, 842 P.2d 48, 52-3 (Cal. 1992); <u>In re Mission Ins. Co.</u>, 48 Cal. Rptr. 2d 209, 213-14 (Cal. Ct. App. 1995); <u>Minelian v. Manzella</u>, 263 Cal. Rptr. 597, 602 (Cal. Ct. App. 1989); <u>see also</u> <u>Campos v. Wells Fargo Bank, N.A.</u>, 345 B.R. 678, 683 (E.D. Cal. 2005).  Setoff is not limited to the same transaction or contract.  <u>Newbery Corp. v. Fireman's Fund Ins. Co.</u>, 95 F.3d 1392, 1398 (9th Cir. 1996); <u>Sprint Commc'n Co. v. State Bd. of Equalization</u>, 47 Cal. Rptr. 399, 405 (Cal. Ct. App. 1995).  Sky King also correctly contends that the interpretation of setoff urged by PJS is instead covered by the

---

performance of the same contract by the plaintiff, the amount of the plaintiff's liquidated sum must be offset against the defendant's unliquidated sum as of the due date of the original debt and only the balance bears interest."  <u>Id.</u>

doctrine of recoupment, which is limited to obligations arising out of the same contract or transaction.  See Newbery Corp., 95 F.3d at 1398-99.

Therefore, PJS is not entitled to summary judgment on the three breach of contract claims, Counts II through IV, on the ground that the defense of setoff does not apply.

## II.  Sky King's Motion for Summary Judgment

Sky King asserts that it is entitled to summary judgment on PJS's claim that it breached the NCAA Tournament contract and the claim that it violated the New Hampshire Consumer Protection Act.  In addition, Sky King seeks summary judgment on its counterclaim that PJS breached the NCAA Tournament contract.  PJS objects, contending that factual disputes preclude summary judgment.

### A.  NCAA Tournament Contract

In support of summary judgment, Sky King contends that it did not breach the NCAA Tournament contract, because specific provisions in the contract addressed the mechanical problems that occurred.  It argues that it complied with those contract provisions.  Sky King asserts that PJS breached the contract by failing to pay Sky King the full price contemplated for its services under the contract, which it argues it fully performed.

Sky King relies on paragraphs five and six of the contract, titled "Operation of the Aircraft" and "Maintenance and Repair," respectively.  Paragraph five gave the "captain of the Aircraft," meaning the pilot, "complete authority and discretion over the Aircraft, support facilities and all matters concerning the preparation and operation of the Aircraft including . . . the condition of the Aircraft for flight . . . and all other factors affecting flight safety."  Ex. C, Def. Mot. (doc. no. 27).  The captain also had "sole discretion to determine whether flights should be rerouted, shortened, delayed, terminated, or refused."  Id.

Paragraph six requires Sky King to keep the aircraft "in a fully operative condition and completely airworthy" and also provides that "[i]n the event of mechanical failure or loss of, or damage to the Aircraft while engaged in the performance of flight, SKY KING shall work with representatives of Customer to achieve a mutually agreeable method of continuing the flight schedule."  Id.  Paragraph six continues:  "SKY KING shall use reasonable efforts to furnish another Aircraft, but in the event of the inability of SKY KING to continue the trip due to the mechanical failure or other cause related to the Aircraft or the flight crew, SKY KING or Customer may, at its option, terminate this Agreement, in which event Customer's payment obligation will

be limited to fees attributable to the portion of the flight prior to termination, and any balance shall promptly be refunded to Customer." Id.

Sky King argues that only three flights were affected by mechanical issues and that it complied with the requirements of paragraph six in all three circumstances. It also argues that all three circumstances were within the broad authority and discretion vested in the pilot under the contract. PJS challenges Sky King's version of the facts, supported by the affidavit of its president, Greg Raiff, and challenges Sky King's broad interpretation of the provision giving pilots discretion to delay or cancel flights for a variety of reasons including mechanical problems and safety issues.

Raiff states that the mechanical problems cited by Sky King affected more than three flights and, in addition, that other flights were affected by a forty-eight hour mechanical inspection Sky King scheduled during the NCAA Tournament and when a flight attendant informed the coach on one flight that the crew was working under dangerous conditions. Raiff also states that Sky King failed to communicate with PJS or provided misleading information when the mechanical issues arose, in breach of paragraph six. Raiff further cites the informal dress of the pilots and that overhead bins in the planes were held together

with duct tape as reasons PJS lost confidence in Sky King's services.

Sky King charges that Raiff's affidavit is not credible and should not be considered for purposes of summary judgment. An affidavit or parts of an affidavit may be stricken if they do not meet the requirements of Rule 56(e), which pertain to the form and the affiant's personal knowledge of the matters in the affidavit. See Perez v. Volvo Car Corp., 247 F.3d 303, 315-16 (1st Cir. 2001). The affiant's credibility, however, is not a proper basis to challenge the facts stated in his affidavit for purposes of summary judgment. See Anderson, 477 U.S. at 255.

PJS further asserts that if the contract actually gave the pilots the broad discretion and authority suggested by Sky King, that provision would undermine the purpose of the contract. Under both California and New Hampshire law, a covenant of good faith is implied with respect to any contract provision that vests discretionary authority with one party that could deprive the other of the value or purpose of the agreement.[2] See Badie v. Bank of Am., 79 Cal. Rptr. 2d 273, 284 (Cal. Ct. App. 1998);

---

[2] Although the NCAA Tournament contract states that California law applies and the parties agree that California law applies to the February contracts, PJS cited New Hampshire law in opposing Sky King's motion for summary judgment on the claims pertaining to the NCAA Tournament contract.

Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation, 14 Cal. Rptr. 2d 335, 340 (Cal. Ct. App. 1993); Ahrendt v. Granite Bank, 144 N.H. 308, 312-13 (1999).  Therefore, the discretion vested in the pilots is restricted to "objectively reasonable conduct."  Badie, 79 Cal. Rptr. at 284.  Further, paragraph six would also apply to any flight delays or cancellations caused by the pilots' decisions.  Therefore, the discretion granted to the pilots in paragraph five does not necessarily justify the circumstances that PJS asserts breached the contract.

Because material factual issues remain, summary judgment is not appropriate in Sky King's favor on PJS's breach of contract claim in Count I or Sky King's breach of contract counterclaim.

### B.  Consumer Protection Act

PJS claims that Sky King misrepresented the quality of its services in violation of the New Hampshire Consumer Protection Act.  Sky King moves for summary judgment on the ground that none of its representations to PJS about the quality of its services violated the Act.  It also contends that the Act does not apply because none of the cited actions occurred in New Hampshire.

The Consumer Protection Act prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA 358-

A:2. Included within the prohibited practices is "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." RSA 358-A:2, VII. "[I]n order for conduct to run afoul of the statute, it 'must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'" Hobin v. Coldwell Banker Residential Affiliates, Inc., 144 N.H. 626, 635 (2000) (quoting Barrows v. Boles, 141 N.H. 382, 390 (1996)).

"An ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act." Barrows, 141 N.H. at 390; accord Milford Lumber Co., Inc. v. RCB Realty, Inc., 147 N.H. 15, 19 (2001). Mere puffery that does not represent that the company adheres to particular standards or requirements is not actionable under RSA 358-A:2. Evans v. Taco Bell Corp., 2005 WL 2333841 at *12 & n.19 (D.N.H. Sept. 23, 2005). Further, in general only factual misstatements, not statements of opinion, constitute actionable misrepresentations. See Mac Fin. Plan of Nashua, Inc. v. Stone, 106 N.H. 517, 520 (1965); Messer v. Smyth, 59 N.H. 41, 43 (1879) ("A representation which merely amounts to a statement of opinion, judgment, probability, or expectation, or is vague and indefinite in its terms, or is merely a loose, conjectural, or exaggerated statement, goes for nothing."). To be actionable, the cited

conduct must be "'within at least the penumbra of some common-law[,] statutory[,] or other established concept of unfairness; . . . [be] immoral, unethical, oppressive, or unscrupulous; . . . [or] cause[] substantial injury to consumers (or competitors or other businessmen).'" Milford Lumber, 147 N.H. at 19 (quoting FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972)).

PJS bases its claim under RSA 358-A:2, VII, on Sky King's promise, memorialized in the contract, to keep its aircraft operative and airworthy; general representations made by Sky King's president, Greg Lukenbill, about the high quality of Sky King's services and equipment, and a Sky King brochure that extols the high quality of Sky King's service. The brochure is titled "Customer Information Guide And Requirements," and the cited passage states: "We at Sky King pride ourselves on operating at the highest attainable level of safety, efficiency and comfort, in order to provide you (our customers) with the hassle-free service and guaranteed satisfaction of our professional First Class Air Travel." Ex. 4 at 2, Pl. Obj.(doc. no. 34). PJS argues that the actual service and equipment provided by Sky King did not meet those high standards because the equipment experienced mechanical failures, the pilots wore sweat pants and jeans, one crew was forced to work longer hours than permitted under FAA rules and Sky King's own rules, and the

overhead bins in the aircraft were held together with duct tape.

Sky King responds that its statements about the high quality of its services and equipment are not actionable under RSA 358-A:2, VII, because they do not provide any implied or express warranties as to quality or any representations about compliance with specific requirements or standards.  Instead, Sky King argues, the cited statements are mere puffery that is insufficient to support a claim under RSA 358-A.  The court agrees.

To the extent PJS relies on its claim that Sky King breached its contract promise to provide airworthy aircraft, a mere breach of contract is insufficient to support the claim.  Lukenbill's opinions of his company and the statement from the brochure are too vague to suggest a particular standard or quality and instead are merely Lukenbill's and Sky King's self-laudatory opinions.  Such statements and representations are not actionable under RSA 358-A.

Sky King is entitled to summary judgment on PJS's Consumer Protection Act claim.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 25) is denied.  The defendant's motion for partial summary judgment (document no. 27) is granted as to the plaintiff's Consumer Protection Act claim, Count V, and is otherwise denied.

The parties should undertake a realistic appraisal of their claims and make a good faith effort to resolve this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 4, 2006

cc:   Jill K. Hauff, Esquire
      Douglas B. Otto, Esquire
      Daniel P. Schwarz, Esquire
      William A. Staar, Esquire